May it please the Court, good morning. My name is Michael Burke, appearing this morning on behalf of Ms. Angle. I will watch my time and attempt to reserve three minutes for rebuttal. In her briefing to this Court, Ms. Angle raised several challenges to both her convictions and her sentences. And with the Court's permission, I would like to spend time today discussing Ms. Angle's Batson challenges to the prosecution's strike of three, the use of three of their seven peremptory strikes. And could you focus first on Juror 41? Certainly, Your Honor. And our position with regard to Juror 41 is that it is subject to a different form of analysis for this Court for one reason, which is that in that instance, the district court judge found only that the government had made a prima facie showing of nondiscrimination. That is not what is required of the third step of the Batson analysis. That requires, to quote from Batson, a sensitive inquiry looking at all the evidence available. In this case, the judge did not do that. She simply found a prima facie showing, which is merely an inference. So under this Court's case law, this Court may conduct a de novo review of whether the strike of Juror 41 was in violation of Batson. And we urge this Court to so find for a few reasons. Juror 41 was a mother of a one-year-old. She lived in Tolleson, Arizona. She had never served on a jury. She had a bachelor's in economics from a university in Mexico, and she also indicated that she had had two uncles, two fraternal uncles, who had served time for drug transportation, one in the United States and one in Mexico. The judge asked Ms. Engel if that or excuse me, Juror 41, if that would be a problem for her impartiality, and she indicated it would not. No further questions were asked of Juror 41. So when she was struck, defense counsel raised a Batson challenge. The government's response was that they struck this juror because she has uncles who went to prison for drug smuggling. These are the types of cases U.S. Attorney the U.S. Attorney's Office regularly prosecutes. Now, under a comparative juror analysis, which is commonly used under Batson analysis, there was another juror, Juror 28, who actually served, whose sister had been convicted of drug transportation. No questions were asked of either juror about the potential bias that those family members' convictions might create. But the government chose to strike Juror 41 and chose to allow Juror 28 to serve. In their briefing, the government seems to suggest that there may be some distinction in the fact that Juror 28's sister was convicted in Michigan and that she received probation. But that really doesn't explain the issue of bias. If someone has a family member who has been convicted of transportation, the bias may well exist. I mean, there is no indication that the government was concerned about specific bias against the U.S. Attorney's Office in the District of Arizona. And even if it was, they never inquired of Juror 41 where her uncle who was convicted in the United States was, in fact, convicted. So on that analysis, we would suggest, we submit that the strike given, the reason for the strike given was pretextual. Again, Juror 28 was allowed to serve. Juror 41 was not. No questions were asked of Juror 41 at all. For that reason alone, this Court should reverse Ms. Engel's convictions and remand for a new trial. Unless the Court has additional questions about Juror 41, we also submit that Jurors 9 and 27 were improperly struck. Now, with regard to Juror 9, the Court would proceed to the third step of the Batson analysis. The government found that the prosecute, excuse me, that the defense had made a prima facie showing of discrimination. The government came back with three race-neutral reasons, and the district court found no Batson challenge. This Court would therefore review for clear error. The first reason and the primary reason given by the government for the strike of Juror 9 was that he, I will read from ER 2, he stated that everyone should be allowed to carry firearms so long as they do so legally. That indicates an expansive view of firearm ownership and possession. As we argue in the briefs, Juror 9's statement was a truism. I may believe that people should follow the law, but that doesn't make me an outlier among citizens. All he said was I believe people should be able to carry guns as long as they do so legally. The – I will note that the district court noted that she tended to agree with defense counsel on this particular issue. The other issues that were raised by the government with regard to support for this strike were that the Juror 9 indicated he was a hunter. Under comparative juror analysis, so was Juror 35, and he was not struck from the jury. Under Miller L. and McLean v. Prunty, this type of comparative analysis is indicative of a pretextual explanation for a strike. And the final justification given for the strike of Juror 49 – excuse me, Juror 9 was that he had early on indicated that the drive from Yuma to the courthouse in Phoenix was inconvenient. The district judge was not persuaded by this reasoning either. She indicated that the entire jury pool came from throughout the State of Arizona, District of Arizona is one district, and that he had indicated it really wouldn't be that much of an inconvenience. Also, other jurors who were not struck had indicated really more specific and more troubling inconveniences had they been required to serve. One juror had a business trip that he would have had to postpone. Another juror was a teacher of special needs children who indicated that her district would have difficulty finding a replacement for her. Those jurors were not struck, and they were allowed to serve. Let me just ask one quick question here. 9, 27, 41, they're all Hispanic? Yes, Your Honor. Were there any other members of the jury pool that were Hispanic and weren't struck? That were not struck? Your Honor, the record does not indicate that there were. I will tell you that there is a juror list that has not been made part of the record, and we are happy to make it part of the record. I used it in my preparation for oral argument. The government obtained a copy of this juror list which has the last names of the jurors, and I could look very quickly, Your Honor, to tell. But our argument would be that even if a juror who was Hispanic served, that would not vitiate the equal protection and due process error that occurred when these individual jurors were struck. The strike of even one minority juror is a violation of the Constitution. But it seems, counsel, if there is a sheet of paper or something that's not – and you say it's not in the record. Are you saying it's not in the ERs or it's not in the court record? It is in – it is not in the ERs. It is part of the record, in our opinion. Oh, okay. Was it filed in the district court record? I don't remember that we used to do that. There was a motion filed by the government in their preparation of the answering brief in this case, asking for its disclosure. A redacted version was disclosed. The government did not choose to file it as an excerpt of record, as a supplemental excerpt of record, and my colleague who wrote the reply brief did not either. But I disclosed to the court that it does exist. We would be happy to provide it to the court at its request. But has the district court ever had access to this list? Yes, Your Honor. The district court actually ruled on the motion. Okay. Yes. And what this list is, it's called the judge's list. Right. And it shows the strikes on it. Okay. I remember that in the briefing. Okay. But even a last name that's not Hispanic doesn't mean that the spouse may be Hispanic. You don't really know. You don't. You don't know. I mean, would that – I mean, what about you say, well, we can take up the question of the third step of the Batson, or should we remand it for the district court to do that? Well, with regard to juror number 41, Your Honor, you could remand to the district court to make the third step analysis. I would respectfully submit that a review of the transcripts in this case suggests that juror 41 was not a native speaker of the English language. So it may not even be necessary to do that. If the question is, was juror 41 in fact a minority, I think, having not myself been involved in this case, I think this transcript itself may provide sufficient information to do that. But, yes, this Court could simply remand to the district court for it to conduct the third step of the analysis with regard to juror 41. With regard to jurors 9 and 27, the district court already conducted that analysis and should not have a second bite of the apple, which is what this Court's – I mean, in this Course, it would grant very wide discretion to the district court in reviewing its ruling. It's a clear error standard. It's a factual finding. And so our argument is that it need not remand to the district court on those two jurors, which, if the Court doesn't mind, I'd like to briefly discuss juror 27. Juror 27. Breyer. Time is almost up. I have probably one more minute that I could – I have 4 minutes and 30 seconds still remaining on a – so very, very quickly. The point that I would like to make about juror 27 is there was some indication that the investigator for the government may have had thought the name was similar to the – an investigation he was aware of may have involved the stepson, the adult stepson of the juror. No inquiry was made of the – of the juror, and he – no question was ever asked of him whether his adult stepson, who had been convicted of a crime in California, even shared his last name. It was complete supposition on the government's part that there might be some correlation between juror 27 and this name with which the investigator was – was familiar. And on those facts, we would submit it was clear error for the district court to deny that Batson challenge as well. So we would ask on either or any of these arguments that the Court reverse Ms. Engel's conviction and remand for further proceedings. I will reserve the remainder of my time. Thank you. May it please the Court. My name is Ryan Powell. I represent the United States. The district court did not clearly err when it concluded that the government had genuine race-neutral reasons for striking jurors 9, 27, and 41. It didn't make that conclusion with respect to 41. The government's position, Your Honor, is that the district court did. Can you show us where? Well, in the record, the – it shows that the – Okay. What page? With respect to juror number 41, the district court considered the reasons of the government. I believe it was at page – I'm looking at 255 and 256 of the ER. Yes. Those are the correct ER sites where the district court did consider the Batson challenge with respect to juror number 41. The government's position is that the court did hear the government's reasoning and listen to the defendant's objections before ultimately ruling – overruling the defendant's Batson challenge. The court did use the words prima facie case. However, the record also illustrates that the court was well aware of its obligations under Batson having already addressed the Batson challenges with respect to jurors number 9 and 27. However, even if this court determines that the district court did not complete the third step of the Batson analysis, this court can undertake a de novo review with respect to the strike of juror number 41. And if the court does that, the record illustrates that the government did have a genuine race-neutral reason for striking juror number 41. The record illustrates that the government had two primary areas of concern when exercising its peremptory strikes, firearms and criminal convictions. Every juror struck by the government with a peremptory strike fell into one of those two categories. And with respect to criminal convictions, the record illustrates that the government was primarily concerned with criminal convictions related to drugs. The only juror struck by the government that did not have a drug-related conviction was juror number 15, and that was a juror who personally had been prosecuted by the United States and noted the ambition of the U.S. Attorney's Office and the FBI. All the other jurors struck with peremptory strikes by the government who had criminal convictions or had a connection to somebody with a criminal conviction, all of those other jurors, the criminal convictions related to drugs. Roberts. Were drugs at all involved in this case? They were tangentially, and the reason is that the crime the defendant was charged with in this case was not that it was illegal for her to possess the firearms, but that she illegally transferred the firearms to her co-defendant. At the very beginning of the trial, the jury was instructed that her co-defendant had numerous prior felony convictions and that two of those prior felony convictions were for drug-related crimes. And so given that the felonies that made it illegal for him to possess firearms were related to drugs, that fact the government used when exercising its powers on individuals who had connections to drug-related convictions. With respect to juror number 41, as juror 41 compares to juror number 28, which counsel brought up doing the comparative juror analysis, when the court engages in this type of analysis, it must consider the totality of relevant facts. It must consider the whole record of the jury selection process when doing this comparative analysis. Again, other than criminal convictions, the other area of concern for the prosecution in this case were issues related to firearms. One of the questions that the district court asked the jury panel as a whole was who here believes there should be more restrictions on guns or gun ownership. Juror 28 answered that question in the affirmative, and juror 28 noted that she believed there should be more restrictions on firearms. Juror 41 did not answer that question either way. So if doing a comparative juror analysis between juror number 41 and juror number 28, the fact that juror 28 felt there should be more restrictions on guns made that's a reasonable reason for the government to believe that juror number 28 would be a more favorable juror for the government than juror number 41. Alito. Counsel, I'm sorry to interrupt here, but for juror 41, the court's comments and they appear on page 31 of your brief, and it's very helpful the way you laid it out. Can you cite a case in the Ninth Circuit where a judge is given a similar type of, I'll call it step three analysis, but a similar type analysis that occurred here and that we ended up affirming and not either remanding or reversing? Because I know you cite Yaloa, Alvarez-Yaloa, for the principle that we can do it on our own. Correct. But that case did not turn out to be a good result for the government. So can you point us to any other case where to get us where you want to go? No, Your Honor, but I will note for the Court that because the Batson analysis essentially is a credibility determination at the end of the day. And because of that, that's why there is such a deferential standard in this case. Now, I understand that this Court is saying, well, if the district court didn't complete the third step of the Batson analysis, obviously that deference would not apply. However, if this Court looks at the record, and because Batson is such a fact-specific inquiry, if this Court does look at the totality of the relevant circumstances, looks at the jurors that the government did strike with its peremptory strikes, and the fact that every one of those jurors either had issues related to firearms or criminal convictions, and then looks at juror number 41, juror 41 falls squarely within the criteria the government used to strike the other jurors that it struck with its peremptory strikes as well. Now, in this case, jumping ahead a little bit, I think you agree that there need to be some supervised release conditions that need to be kind of fixed. That's correct. The government does not oppose a limited remand with respect to the alcohol condition because the oral pronouncement at sentencing was different than the written judgment. And the government also does not object to a limited remand with respect to the defendant's father, with respect to contact with him, either to allow the district court to make additional findings or simply to strike that requirement. All right. So here comes kind of the not very fair question I'm asking anyway. Since we're going to remand for those things, why not just remand to kind of clear up once and for all this step three analysis? The reason, Your Honor, is that on this record it's not necessary. The government concedes that there was error with respect to those two other conditions that need to be remanded. However, the record is sufficient in this case for this court to conduct a de novo review if it finds that that's necessary, which seems to be the case, and conclude that there was a genuine race neutral reason that the government was not motivated by discriminatory intent when it struck juror number 41. Tell me this. Were any Hispanics left on the jury? Your Honor, that is not clear from the record. I know that when opposing counsel was discussing this list that exists that has not been made part of this record. But as Your Honor noted, a juror's last name is not a good proxy for that juror's race. And so the record is not clear with respect to the racial makeup of the final jury panel that actually considered the case. Briefly, I would like to address a couple of issues brought up by opposing counsel with respect to the other jurors. Juror number 9, with respect to the hardship that juror number 9 mentioned, it was not only that juror number 9 had to travel back and forth. Juror number 9 also noted that he would not get the days off from work and that he'd have to use vacation days if he were to be seated on the jury panel. Also, that was not the primary reason that the government struck juror number 9. As the government explained, the primary reason was juror number 9's response when the court asked, does anyone have strong opinions about the Second Amendment or firearms? Juror number 9 was the only panelist left at that point who had answered that question affirmatively who had not been struck either for cause or for hardship. Additionally, with respect to juror number 27, the reason that the government struck that juror was not only that the case agent recognized that last name, but the first reason that the government gave for striking juror number 27 was that his stepson had been convicted of a firearms-related crime and also drug-related crimes and had been sent to prison for those crimes. Because this case directly involved firearms and tangentially involved drugs, there was a race-neutral, genuine reason for the government to strike that juror. Ultimately, the government had race-neutral, genuine reasons to strike jurors 9, 27, and 41, and asked this Court to affirm the lower court's denial of the defendant's facts and challenges. Roberts. So before you sit down, you want to – did you want to address the multiplicitous argument that they advanced? Yes, Your Honor. With respect to the multiplicitous argument, all this Court has to do is apply the Blockburger test. Each of the crimes the defendant was charged with in this case requires proof of a fact that the other does not. Therefore, they are not multiplicitous. It is also possible to commit each count without necessarily committing the other count, and therefore, neither count is a lesser-included offense of the other. An individual, given the charged crimes in this case, could commit count 1, which was aiding and abetting a felon in possession of a firearm, by driving that individual to a gun store, giving a felon money to go buy a gun, and by doing that would have committed count 1, but not count 2, which requires a transfer of a firearm. Similarly, an individual could commit count 2 and not commit count 1 by providing a felon with a firearm that had been manufactured in the state where they were, and that firearm had never traveled in interstate commerce. That would be a violation of count 2, but not a violation of count 1. Because it's possible to commit each count without necessarily committing the other, the counts are not lesser-included offenses of each other, nor are they multiplicitous. And then in terms of sentencing consequences, I was trying to figure out what the practical effect would be if we were to disagree with your analysis just hypothetically. Sure. Is it just a special assessment? That's the only thing that appears on the record that would be the difference. The offense level wouldn't change. The sentencing range wouldn't change. The defendant was given a below-guideline sentence anyway. But the only impact on sentencing, if the court were to find that the counts were multiplicitous, would be the special assessment. Okay. Thank you.  Thank you, counsel. Very briefly, Your Honors. Judge Gilman, and I feel awkward answering your question about what jurors served on the panel without having this made part of the record. Again, we would offer to make this part of the record if the Court would like to see it. My review of the juror list indicates that no juror with an obviously Hispanic name served as a juror in the trial of this case. So that's an answer to your question. Now, I agree with the government that a last name is not necessarily a good indication of what someone's heritage or racial background is, but I would, in answer to your question on that, and also very quickly, the government's argument with regard to the strike of Juror 41 is an excellent example of why remand would not be appropriate in this case. Counsel for the government explained to you an analysis of the difference between Juror 28 and the 2041 that the government has now had two years to manufacture. It was not presented in the district court. And as the Court noted in Miller L., a challenge to a strike under Batson must rise or fall on the prosecutor's answer in court. What actually motivated the strike in that case? And there was no discussion at all about the distinction between Juror 28's comments of restrictions on guns and number 41's silence on that point. If the Court has no other questions, we would ask that the Court reverse the convictions.  Thank you, Your Honor. Roberts. Thank you. We had one other case. Thank you very much, counsel. We appreciate your arguments. Interesting case. Matters submitted at this time. We had one other case on calendar, United States of America v. Soto and Padilla. That consolidated case is submitted at this time. Thank you. And that ends our session for today.
judges: Gilman, Paez, Owens